## KAUFMAN v. KAUFMAN.

(Supreme Court, Special Term, New York County. July 5, 1916.)

1. DIVORCE ☞328—FOREIGN DECREE AGAINST NONRESIDENT.
    While the courts of New York have uniformly protected its citizens against divorce decrees obtained by constructive process in foreign jurisdictions, they have not gone so far as to protect a nonresident, and declare void a decree granted in a foreign jurisdiction against a nonresident of the state; to avoid a foreign decree of divorce, it must be shown that defendant in the action was at the time of the rendition of the decree a resident of New York.
    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. ☞328.]

2. MARRIAGE ☞60(7)—ANNULMENT—BURDEN OF PROOF.
    In an action by a husband to have his marriage declared void on the ground that his wife had a former husband living at the time of the marriage, where the wife had secured a divorce in Nevada against her former husband on constructive service, the burden is on the plaintiff husband to establish by clear and satisfactory evidence that the former husband was a resident of New York when the Nevada decree was rendered, so that the divorce was inoperative.
    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 131; Dec. Dig. ☞60(7).]

3. DOMICILE ☞10—DETERMINATION BY COURT.
    In a husband's suit to annul his marriage, where the wife's former husband's domicile is material, the court is not compelled to accept his conclusion as to the fact, but may reach, from all the circumstances of the case, a different conclusion.
    [Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. ☞10.]

4. DIVORCE ☞63—DOMICILE.
    When a husband deserted and abandoned his wife in New York, their matrimonial domicile in the state was broken, and the wife was free to select any other domicile which she desired, and, after having established her own matrimonial domicile in Nevada, was entitled to institute an action for divorce in that forum.
    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 201, 217; Dec. Dig. ☞63.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. DIVORCE ☞63—DOMICILE.**

Where a wife abandons her husband in New York, the matrimonial domicile continues in the state, and she cannot obtain a valid decree of divorce in Nevada.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 201, 217; Dec. Dig. ☞63.]

**6. DIVORCE ☞54—DESERTION BY HUSBAND.**

A husband, after wrongfully deserting his wife in New York, cannot obtain a valid decree of divorce in any other state.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 190–196; Dec. Dig. ☞54.]

**7. DIVORCE ☞327—FOREIGN DECREE—RECOGNITION.**

Where a wife's former husband wrongfully deserted her in the state of New York, and thereafter the wife acquired a separate domicile in Nevada, where she remained longer than the statutory period necessary to give its courts jurisdiction to grant divorce, and remained there for months after a decree was granted her, until she changed her domicile to New York at the request of the party she subsequently married, the New York court will not refuse to recognize the Nevada decree in the suit of the party she subsequently married to annul the marriage on the ground she had a former husband living.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. ☞327.]

Action by one Kaufman against one Kaufman to have declared void and to annul a marriage existing between plaintiff and defendant. Judgment for defendant, dismissing the complaint upon the merits.

Milton Dammann, of New York City (William Travers Jerome, of New York City, of counsel), for plaintiff.

Samuel Ecker, of New York City (Leo R. Brilles, of New York City, of counsel), for defendant.

SHEARN, J. This action is brought by the plaintiff to have declared void and to annul a marriage existing between the plaintiff and the defendant on the ground that the defendant had a former husband living at the time of the marriage of the parties. The action was commenced by the service of a summons on December 25, 1915, and issue was joined by defendant's answer on March 11, 1916. The complaint charges that the plaintiff and the defendant were residents of the state of New York, were married in the state of Connecticut on April 15, 1913, that there is no issue of said marriage, and that prior to the marriage between the plaintiff and the defendant the defendant was lawfully married to one John David Buckley, who was living at the time of the marriage between the plaintiff and the defendant, and that such marriage was in full force and effect. The answer denies all of the material allegations of the complaint, except the marriage between the parties, and that the defendant had, previous to such marriage, contracted a lawful marriage with one John David Buckley, and sets up several defenses, which, in brief, may be summarized as follows: (1) Absence for five successive years of the defendant's former husband, Buckley, without his whereabouts being known to the defendant, and without knowledge on defendant's part that said Buckley was living, and that she contracted her second marriage in good faith, believing

that her first husband was not alive.  (2) A valid decree of divorce obtained by the defendant in the state of Nevada, dissolving the marriage between her and Buckley.  (3) Conduct of the plaintiff not entitling him to equitable relief.

With one or two exceptions there was no dispute as to the facts adduced by the testimony of all the witnesses called by the plaintiff and the defendant.  The defendant, at the age of 16 years and 10 months, was married to John David Buckley on July 19, 1902, in the city of New York.  Defendant cohabited with Buckley as his wife for slightly more than one year thereafter.  During this period the couple were supported by defendant's parents.  Buckley never supported the defendant, and left her in 1903.  Buckley resided with his mother, father, and sisters from 1903 until he left the state of New York in July, 1910. Defendant saw Buckley once in 1906, but never saw or communicated with him thereafter.  From July, 1910, until shortly before the trial, Buckley roved about the country, pursuing the calling of vaudeville actor, except during one period of about a year, when he worked as a machinist in La Porte, Ind.  He resided in La Porte during 1914–15, and in Chicago for a year thereafter.  During the four other years of his six years absence from the state of New York he did not remain in any one place for a long period of time.  Buckley, who was produced by the plaintiff as a witness, testified that he had not had any permanent residence since 1909, but that he regarded New York City as his residence.  Nevertheless, at the time of the trial, he was sojourning in Jersey City.  While there, evidently awaiting the trial, he made a visit to New York City on one occasion to witness a baseball game.

The plaintiff and the defendant knew each other for a number of years prior to 1911.  Plaintiff repeatedly urged the defendant to marry him.  Defendant refused these offers of marriage, because she did not know whether Buckley was alive or dead.  Shortly prior to defendant's marriage with plaintiff she endeavored to ascertain whether Buckley was alive.  She advertised for him in Eastern and Western newspapers, and consulted an attorney.  It must be said, however, that the inquiries were somewhat superficial, for diligent inquiry would have doubtless resulted in ascertaining that Buckley had been living in New York City until July, 1910.  The defendant, in February, 1911, finally yielded to plaintiff's importunities and decided to marry him.  She established a residence in Reno, Nev., and there instituted a suit for an absolute decree of divorce against Buckley in that state on the ground of desertion, which, so both the plaintiff and the defendant honestly believed, would settle any possible question that might arise with respect to Buckley, of whom nothing had been heard since 1906.  No personal service was effected, but, on proof of service by publication, a decree of absolute divorce was entered in the Nevada courts in favor of the defendant and against Buckley on October 12, 1911.  Defendant remained in Nevada for a considerable period of time after the decree, and then returned to New York.  Plaintiff advanced to defendant all the money required for her transportation to and from Nevada and for the payment of expenses connected with the commencement and prosecution of the Nevada action.  About a year and a half subsequent to

the Nevada decree, April 15, 1913, plaintiff and the defendant inter-married in the state of Connecticut, to which state they resorted on the suggestion of the plaintiff, and, as he testified, in order to avoid publici-ty incident to taking out a license in the city of New York. A few days after their marriage in Connecticut they went abroad, and gave notice of the marriage in the Paris Herald. In August, 1915, differences arose between the parties and they separated, whereupon this action was brought.

In an action for annulment under such circumstances, as the ac-tion is consistent with entire propriety of behavior on the part of the wife during the entire marriage relation, and as the result frees the husband from any legal obligation to support the wife, although she may be entirely blameless, and as a decree in favor of the plaintiff brands the defendant as a bigamist and an adulteress, every con-sideration requires the plaintiff to make out the clearest kind of a case. Plaintiff relies upon the line of cases holding that the courts of this state will not recognize a decree of divorce rendered in another state against a resident of this state who was not personally served with a summons within either state.

[1] While the courts of this state have uniformly protected its cit-izens against the decrees obtained by a constructive process in foreign jurisdictions, they have not gone so far as to protect a nonresident, and declare void a decree granted in a foreign jurisdiction against a nonresident of this state. If Buckley, the former husband of the defendant, was a nonresident of this state at the time of the rendition of the Nevada decree, the decisions of this state refusing to recognize foreign decrees have no application. In order to avoid a decree of divorce, it must be shown that the defendant in that action was at the time of the rendition of the decree a resident of this state. Perci-val v. Percival, 106 App. Div. 111, 94 N. Y. Supp. 909, affirmed 186 N. Y. 587, 79 N. E. 1114.

[2, 3] The plaintiff has failed to sustain the burden resting on him to establish by clear and satisfactory evidence that Buckley was a. resident of this state at the time the Nevada decree was rendered. While Buckley did say that he considered New York his home and this state his residence, the court is not compelled to accept his con-clusion, but may reach, from all the circumstances of the case, a dif-ferent conclusion. There was nothing about Buckley, his manner, his mode of life, or the circumstances attending his appearance in assist-ing the plaintiff to a decree against the woman he had deserted, that entitled his testimony to be credited. Instead, all the circumstances tended strongly to discredit him and his testimony. When one con-siders that he had been absent from this state for six years, that he had settled in other states for as long as a year at a time on two oc-casions, that he had done nothing consistent with a residence in New York state, that his only appearance in the state since departing from it was for the purpose of this trial, excepting only the baseball episode, that although now claiming a residence in this state he preferred after an absence of six years to sojourn in Jersey City, instead of New York, and that he actually testified that he had no permanent resi-

dence, the court will not accept his mere declaration that he "considers" this state to be his residence for the purpose of annulling an otherwise legal marriage.

[4, 5] There is another ground upon which judgment should go for the defendant. Buckley admitted that he deserted the defendant in the state of New York, and that he failed to support her, and had not contributed anything to her support for a period of over ten years. When Buckley deserted and abandoned his wife in this state, the matrimonial domicile was broken, and the defendant was free to select any other domicile which she desired, and after having established her own matrimonial domicile was entitled to institute an action for divorce in that forum. A different situation would have arisen if the defendant had abandoned Buckley, for then the matrimonial domicile would have continued in this state, and she could not have obtained a valid decree in a foreign jurisdiction.

[6] Buckley, after abandoning the plaintiff, could not obtain a valid decree in any other state, for he wrongfully deserted his wife. She, however, being the innocent party, and the New York matrimonial domicile having been broken, was free to acquire a domicile wherever she pleased. She testified that when she told the plaintiff that she would go out West, she stated to him that she would not return. This is undisputed. She testified that plaintiff told her that she need not return; that he would go out West, and that they would reside at the place she selected; and this is not disputed. She went to Reno, Nev., as she testified, in the furtherance of her intention to live permanently in the West, and remained there for months after the decree of divorce was granted, when at the request and repeated solicitation of the plaintiff she returned to the state of New York. This is undisputed. If the marriage between the plaintiff and the defendant had taken place immediately after the Nevada divorce, it would doubtless appear that, as the plaintiff had furnished the funds for the divorce proceeding and the journey, the residence there was not bona fide. But the parties did not marry until a year and a half after the Nevada decree. Under these circumstances, there is no reason why the court should reject the undisputed testimony of the defendant with regard to the bona fides of her domicile in Nevada, especially upon the urging of the plaintiff, who, after assisting the defendant to obtain the Nevada decree and getting her to marry him on the strength of it, now seeks to have the court declare that what he did was wrong and in bad faith, and thus enable him to profit by his own wrong.

[7] Therefore, the former husband of the defendant having deserted her in the state of New York, and the matrimonial domicile in this state having been thus broken, and the defendant having, as she had a right to do, acquired a separate domicile in Nevada, where she remained longer than the statutory period, and having remained there for months after the decree was granted, until she changed her domicile to the state of New York at the request of the plaintiff, this court will not refuse recognition of the foreign decree. North v. North, 47 Misc. Rep. 180, 93 N. Y. Supp. 512, affirmed 111 App. Div. 921, 96 N. Y. Supp. 1138, appeal dismissed 192 N. Y. 563, 85 N. E. 1113.

Such being the case it is unnecessary to discuss the further point raised by the defendant that the conduct of the plaintiff has been inequitable and unconscionable, and that he is not entitled to equitable relief.

Judgment for defendant, dismissing the complaint upon the merits, with costs. Findings passed upon. Judgment signed.