KATE E. KNILL, Plaintiff, *v.* FREDERICK G. KNILL, Defendant.

Supreme Court, Fulton County, July, 1922.

**Husband and wife — annulment — divorce from first wife in foreign jurisdiction — when court here will not recognize decree — change of domicile for sole purpose of obtaining divorce is fraud on court.**

In an action to annul a marriage on the ground that defendant had another wife living at the time, it appears that defendant and his first wife lived in this state and owned property here; that she deserted him and went to Connecticut; that he later went to Nevada; that having stayed there just long enough to permit it he brought an action to divorce her, and that upon obtaining his decree by default immediately removed to this state where he has since resided and where he married the plaintiff. Defendant testified that he went to Nevada only for the purpose of getting a divorce. *Held*, that the courts of this state will not recognize the Nevada decree, since he perpetrated a fraud on the law of his domicile by temporarily sojourning and procuring a divorce there without a *bona fide* residence, and the plaintiff is entitled to judgment annulling the marriage.

ACTION to annul a marriage.

*Eugene D. Scribner*, for plaintiff.

*Wesley H. Maider*, for defendant.

WHITMYER, J. Plaintiff is seeking to annul her marriage with defendant on the ground that his wife by a former marriage was then living and that said marriage then was and still is in force under the laws of this state. He had obtained a divorce from his former wife in Nevada, and the case involves the question of the validity of the divorce. The facts are as follows: Defendant married his first wife in England on September 14, 1873. Shortly thereafter they came to this country and settled in Gloversville, N. Y. He became a citizen there and they lived there, together, until June 9, 1907, when she abandoned him, willfully and without cause, going at first to Kingston, in this state, and then, after a few months, to Connecticut, where she has since resided, without any request for or support from him. She is living there now. He remained in Gloversville until early in September, 1912, when he went to Reno, Nev. He arrived on September 10, 1912, or just before. On March 13, 1913, he filed a complaint, verified March 12, 1913, in an action for divorce on the ground of her abandonment. He alleged, in effect, that he

had resided in Nevada for six months immediately preceding; that she abandoned him, willfully and without cause, on June 9, 1907; that she has since been and then was a resident of Connecticut, and that he owned real property in Gloversville, N. Y., worth about $8,000 and mortgaged for about $10,000, and he asked for a division of the common property, in addition to the divorce. The order for and the affidavit of service of the summons and complaint are not shown in the transcript of record in the action, in evidence, but the record shows that they were before the court and sets forth that she was duly and personally served, with a copy of each, at Hartford, Conn., on March 31, 1913, pursuant to the laws of Nevada and the order of the court. She did not appear or answer, and the court thereupon, and on May 12, 1913, directed the entry of her default, after which the evidence was taken. N. A. Brown and defendant were sworn. Brown testified to the effect that he had known defendant for about two years by correspondence, and since the early part of September, 1912, perhaps between September 5 and 10, 1912, personally, and that he had seen him probably twenty times or more in the meantime. Defendant testified to the effect that he had resided in Reno continuously since September 10, 1912, living with one Sellman, a builder, all of the time, excepting about two and one-half months, when he worked at a hospital; that his wife left him, without cause, on June 9, 1907, and had been a resident of Connecticut practically ever since; that he had not seen her since; that he was a carpenter and owned property in Gloversville, worth about $10,000, and mortgaged up to its value; that his wife had not contributed in any way, and that she had brought an action in Connecticut for a divorce from him. The court asked for the papers in her action and he handed them up. The complaint was dated April 8, 1913, and alleged that she was a resident of Connecticut and had been there continuously for three years next before, and that he was a resident of Reno, Nev., and it alleged cruelty, on his part, on different days between June 1, 1904, and that date, and desertion on June 9, 1907. That was the date stated in his complaint. The summons directed him to appear and answer on the first Tuesday of May, 1913, and the court directed the service of the papers on him, by registered mail, at Reno, on or before April 9, 1913. This was done and the registry return receipt was received April 28, 1913. Thereupon the court found and decided that he had resided in the state continuously for more than six months before the commencement of the action and the filing of the complaint and was a *bona fide* resident thereof at the time of the commencement of the action and at that time,

and that he was entitled to a decree dissolving the bonds of matrimony and entitled to the ownership and possession of the community property described in the complaint. And a decree, accordingly, followed. He then returned to Gloversville and has resided there ever since. She did not proceed further with her action, but withdrew it on February 15, 1915. Thereafter, and on July 28, 1920, plaintiff arrived in New York city from England. On July 29, 1920, she and defendant applied for and obtained a marriage license there. Both subscribed and swore to the application. This stated that he was a divorced person and that the divorce was granted to him at Reno, Nev., on May 12, 1913. She knew about the divorce, before the marriage, but did not know of the illegality, if any, in it. They were married in Albany, N. Y., on August 1, 1920. Following this, they went to Gloversville, N. Y., where they lived together for several months, when she brought this action. Before any evidence was taken the parties stipulated that defendant became a resident of Nevada, prior to obtaining his decree there. After that, defendant testified, on direct, that he boarded while in Reno, worked there, as a nurse in a hospital, for two and one-half months, and in a creamery for a little over three months, and that he voted there at the spring election in 1913, and, on cross, that he did not, before leaving, sell any of his real estate, but that he went to get a divorce and that he returned to Gloversville after he got it. The courts of a state are not required, under the full faith and credit clause (U. S. Const. art. 4, § 1) to enforce a decree rendered in another state, if there was no jurisdiction there, either of the person of the defendant or of the subject-matter. And, where that clause is invoked, the question of the jurisdiction of the court rendering the decree is open to inquiry. *Thompson* v. *Whitman*, 18 Wall. 457; *Andrews* v. *Andrews*, 188 U. S. 15, 33–37; *Haddock* v. *Haddock*, 201 id. 562, 573; 2 Schouler Marr. & Div. (6th ed.) §§ 1967–1970. In this state the courts decline to enforce such a decree so lacking in jurisdiction. *Haddock* v. *Haddock, supra*, 557, 588. When defendant obtained his decree in Nevada, willful desertion of either party by the other for the space of one year was a ground for divorce and it was obtained by complaint, under oath, to the District Court of the county where the cause accrued, or where defendant resided or was found, or where plaintiff resided, if that was the county in which the parties last cohabited, or in which he resided for six months before suit brought. His former wife having, so far as appears, never resided in Nevada, his right of action, if any, was dependent upon his own residence for at least six months in the county in which he brought it. And a *bona fide* residence, in

other words, a legal domicile, was required. That was a prerequisite. *Andrews* v. *Andrews, supra; Bell* v. *Bell,* 181 U. S. 175; *Streitwolf* v. *Streitwolf,* Id. 179; *Atherton* v. *Atherton,* Id. 155. New York state was the matrimonial domicile, until his former wife went to Connecticut to live, after she deserted him. Her desertion was willful and without cause. He remained here for five years and this was their legal domicile during that time. Then, being unable to get the desired relief here, he went to Nevada, and, after residing there just long enough to permit it, he commenced his action and the papers were served upon her according to Nevada law. She did not appear or answer, but immediately commenced an action against him, in Connecticut, for a divorce on the ground of his alleged desertion, recognized there, also, as a ground, and the papers were served upon him according to Connecticut law. He produced them on his hearing. In these, she alleged that she was a resident of Connecticut and he of Nevada, thus, in effect, recognizing his claim in that respect. Thereupon, after some testimony to the effect that he had resided there continuously for six months before, the court gave him a decree, based upon the finding that he was a *bona fide* resident of the state. And she, subsequently, withdrew her action, and thus, again, in effect, recognized his claim. But it is clear from the evidence and he has testified that he went to Nevada solely to obtain a decree. Thus, he perpetrated a fraud on the law of his domicile, by temporarily sojourning and procuring a decree there, without a *bona fide* residence (*Andrews* v. *Andrews, supra,* 38), and the courts here will not enforce it. Although the stipulation, at the outset, that he became a resident of Nevada before he obtained a decree, was not withdrawn after he testified, nevertheless it is not binding upon the court in the face of the evidence. And the fact that she deserted him, without cause, before he went to Nevada, does not change the situation, since a *bona fide* residence there, on his part, was required in any event. If he had acquired it, his domicile there would have been her domicile, actual, if she followed, and constructive, if she did not. *Hood* v. *Hood,* 11 Allen, 196; *Burlen* v. *Shannon,* 115 Mass. 438. Finally, her appearance or consent could not have conferred jurisdiction, and it follows that her recognition did not. *Andrews* v. *Andrews, supra.* The question of good faith was not involved in the case of *North* v. *North,* 47 Misc. Rep. 180; affd., 111 App. Div. 921, relied upon by defendant. The defendant there went to California for the purpose of actually and in good faith acquiring a permanent domicile and he remained for three years. Plaintiff is entitled to judgment. Findings accordingly.

Judgment accordingly.